### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT W. ANDERSON,

    *Plaintiff*,

v.                            CASE NO. 2:13–CV–13483-BAF–PTM

COMMISSIONER OF             DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,          MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB").

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff Robert Anderson was 55 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 59, 149.)  Plaintiff worked for 32 years as an iron worker. (Tr. at 197.)  Plaintiff filed the present claim on January 25, 2010, alleging that he became unable to work on February 15, 2009. (Tr. at 149.) The claim was denied at the initial administrative stages. (Tr. at 78.)  In denying Plaintiff's claims, the Commissioner considered muscle ligament disorders fascia, and disorders of back, discogenic and degenerative. (*Id.*)  On July 3, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Melvin Kalt, who considered the application for benefits *de novo*. (Tr. at 9-25, 59-71.) In a decision dated July 20, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 21.) On August 2, 2012, Plaintiff requested a review of this decision. (Tr. at 6-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 2, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On August 14, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.  Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990), *superseded by statute on other*

*grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the Social Security Agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and

credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available

only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her

past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540.

If the analysis reaches the fifth step without a finding that the claimant is not disabled, the

burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers

exist in the national economy that [claimant] could perform given her RFC [residual functional

capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20

C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ first noted that the case had been remanded on March 28, 2012.  "In its remand

order, the Appals Council directed the [ALJ] to give further consideration to the claimant's

maximum residual functional capacity and evaluate all treating, nontreating, as well as

nonexamining source opinion evidence.  In particular, the Appeals Council directed the [ALJ]

to properly weigh the opinion of Joseph P. Femminineo, MD..." (Tr. at 12, 96-97 (Appeals

Council decision).)

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim

and found at step one that Plaintiff met the insured status requirements through December 31,

2015, and that Plaintiff had not engaged in substantial gainful activity since February 15, 2009,

the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's status post

shoulder arthroscopies for rotator cuff tears, degenerative disc disease of the cervical spine, and

carpal tunnel syndrome were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id.*) At

step three, the ALJ found no evidence that Plaintiff's combination of impairments met or

equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that

Plaintiff was unable to perform any past relevant work. (Tr. at 19.) The ALJ also found that Plaintiff was 51 years old as of the alleged onset date, which is an individual closely approaching advanced age under 20 C.F.R. § 404.1563. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 15-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20-21.)

### E.   Administrative Record

The relevant medical evidence contained in the administrative record indicates that, after having been injured in a car accident in February 2009, Plaintiff was treated at the Associated Internists of Macomb from April 2009 through December 2009. (Tr. at 268-74.)

On May 14, 2009, Plaintiff underwent a right shoulder arthroscopy, including some repair of his tendons and subacromial decompression. (Tr. at 276, 294, 300-02.) On July 24, 2009, Dr. Bishai noted that Plaintiff's "[a]xillary sensation is intact[,]" "[t]here is full elbow and wrist motion and finger motion with median, ulnar, and radial nerves being grossly intact with a 2+ radial pulse." (Tr. at 294.) Dr. Bishai indicated that Plaintiff was "doing better with his pain" and that he was "more compliant with sling." (Tr. at 295.) It was recommended that Plaintiff attend therapy and continue to wear the sling because Dr. Bishai was "concerned that he may have torn the supraspinatus again by his noncompliance with the sling..." (*Id.*)

On December 2, 2009, an MRI of Plaintiff's left shoulder showed a "tear of the supraspinatus tendon with retraction[,]" "evidence of tendinosis and suspected old partial tear of the infraspinatus tendon" and "fluid encircling the long head of the biceps tendon compatible with tenosynovitis." (Tr. at 268.) On December 7, 2009, Dr. Bishai restricted Plaintiff to "[n]o

lifting over 5-10 pounds.  Also no work above ground level.  Due to Right Shoulder Rotator Cuff Repair." (Tr. at 327.)

Plaintiff was also treated at the Associated Orthopedists of Detroit from January 2009 through January of 2010. (Tr. at 275-312, 327-28.)

On January 14, 2010, Plaintiff underwent a left shoulder arthroscopy, including some repair of his tendons, repair of the rotator cuff, and subacromial decompression. (Tr. at 276, 278.)  On January 29, 2010, Dr. Bishai, D.O., of the Associated Orthopedists of Detroit followed up with Plaintiff after his surgery and noted that Plaintiff's "[a]xillary sensation is intact[,]" "[t]here is full elbow and wrist motion and finger motion with median, ulnar, and radial nerves being grossly intact with 2+ radial pulse." (Tr. at 275.)  In addition, Dr. Bishai noted that "[n]eurovascularly everything moves in and everything is intact" and that "[p]inwheel testing of the finger shows that he does have sensation that is normal and equal to the other hand." (*Id.*)  Dr. Bishai recommended that Plaintiff start therapy in about two weeks. (Tr. at 276.)  Also on this date, January 29, 2010, Dr. Bishai indicated that Plaintiff "is not allowed to move [left] shoulder." (Tr. at 328.)

On April 19, 2010, Dr. Bishai noted that Plaintiff's "[a]xillary sensation is intact[,]" "[t]here is full elbow and wrist motion and finger motion with median, ulnar, and radial nerves being grossly intact with a 2+ radial pulse." (Tr. at 314.)  Dr. Bishai also noted that Plaintiff "good strength in the shoulder[,]" that the "snapping that he hears is scar tissue" and that he should continue therapy and "work hard on his home exercise program." (Tr. at 315.)

On June 4, 2010, Dr. Bishai noted that Plaintiff indicated he was "feeling better and has more motion but he is still weka" so Dr. Bishai recommended he "continue with therapy" and

"told him to work on strengthening." (Tr. at 318.)  Dr. Bishai also stated that he would see Plaintiff in "2 months hoping at that point he will have more strength and we can discuss his return to work, likely with restrictions." (*Id.*)

On August 2, 2010, Dr. Bishai was "very happy to see how he has almost all of his motion back" but noted that Plaintiff was "still tentative about getting back to work in carrying heavy steel" and Dr. Bishai agreed that he also was "not comfortable with him working 2-3 stories up" so he recommended seeing Plaintiff again in 3 months to assess his progress. (Tr. at 320.)

On April 27, 2011, Dr. Bishai stated, "I believe the symptomolgy that he explains is coming from his cervical spine" and that "X-rays are obtained today which do show degenerative changes in the cervical spine which could be causing some of the pain down the arm" (Tr. at 324.)  Dr. Bishai recommended Plaintiff return in 6 weeks for further evaluation. (*Id.*)  Corresponding x-ray results showed "[m]ild degenerative change" in the cervical spine with no central canal stenosis. (Tr. at 326-27.)

On August 31, 2011, Plaintiff was examined by Joseph Femminineo, M.D., of the Great Lakes Physiatrists. (Tr. at 328-29.)  Dr. Femminineo opined that "the disc herniation documented on the MRI may have been aggravated by his employment.  Any repetitive movement or overhead activity will make his symptoms worse.  At this point in time, it is my opinion that Mr. Anderson is capable of returning to work in a sedentary capacity only.  He is unable to lift weights greater than 10 pounds on a repetitive basis, and as a consequence, he would be unable to return to his previous level of employment." (Tr. at 329.)

On June 28, 2012, Ronald J. Pierskalla, M.D., wrote a letter indicating that he had seen Plaintiff in June of 1995, in July of 2005, and was "talking with Mr. Anderson" on the date of the letter. (Tr. at 330.)  Dr. Pierskalla opined that Plaintiff "is not suitable to perform the work required of an iron worker. He should not be lifting more than 10 lbs, climbing ladders or performing overhead work.  he should be limited to nothing more than sedentary activity due to his condition." (*Id.*)

Plaintiff indicated, in his Function Report, that he cares for his dog, is able to take care of his personal needs but ash some discomfort in doing so, mows the lawn with help pulling the starter, goes outside 3-4 times a day, walks and drives a car, shops in stores twice a week for 2-3 hours at a time, handles finances, plays cards, watches television, uses the computer, spends time with others, goes to church every other week, and is able to walk one mile before he needs to rest for ten minutes. (Tr. at 212-16.)

At the administrative hearing, Plaintiff testified that he is able to drive for less than long periods of time, and that he lives with his wife and 23 year-old son. (Tr. at 32-33.)  Plaintiff stated that he has "lost a lot of strength"and has "limited rotation" in his right arm as well as numbness and weakness in his left arm. (Tr. at 35-36.)  Plaintiff indicated that during a typical day he makes coffee, watches television, goes outside, tries to do a little yard work, relax, do laundry, and he added that he takes some extra time to get himself ready in the morning because of the difficulty he has reaching behind his back. (Tr. at 38.)  Plaintiff indicated that without pain medication, his pain is at seven out of ten and with medication, it is about three or four out of ten. (Tr. at 38-39.)  Plaintiff stated that he has not been prescribed anything for carpal tunnel syndrome, not even braces. (Tr. at 40.)  Plaintiff testified that he can walk for a "[h]alf-an-hour or so" and can stand for "[h]alf-an-hour/40 minutes." (Tr. at 40-41.)  Plaintiff added that he has a "little bit" of trouble bending down and that his bones

11

'crack a little bit" when crouching or kneeling. (Tr. at 41.)  Plaintiff also stated that he lies down two or three times a day for 25-45 minutes at a time. (Tr. at 45-46.)

Plaintiff had indicated that he was living on "our banking and my wife has a few dollars that come in" from her part-time job. (Tr. at 32.)  The ALJ later followed up on that answer and asked whether Plaintiff received any other income, to which Plaintiff responded, "yes, in the beginning, I did have some Unum" insurance payments. (Tr. at 46.)  Plaintiff was asked how he received $14,000 in income in the second quarter of 2009 and $6,000 in the fourth quarter of 2009 when he had stopped working in February 2009 and Plaintiff gave "[n]o verbal response." (Tr. at 46.)  When asked whether that was vacation, Plaintiff responded, "Yeah, that was owed to me." (Tr. at 47.)  When the ALJ clarified that the monies were listed as wages, Plaintiff responded, "Oh" and when further asked if the funds represented past wages, Plaintiff responded, "The $6,000.  I know I wrote that down and I can't - - I've got to remember what that was for, I think it was on almost like a profit sharing, you know, when I closed on a job." (*Id.*)  When asked whether he received any unemployment, Plaintiff responded, "I had gotten a little bit of unemployment" and the ALJ stated, "[t]his is a lot of unemployment" and listed the figures for 2010-11 which added up to "more than most people live on in a year." (Tr. at 48.)  The ALJ explained that Plaintiff should be "consistent" regarding whether he had some income or not and explained that the income would not be held against him "except if you don't tell me you're getting it [t]hen it becomes an issue of credibility." (Tr. at 49-50.)  Plaintiff indicated he understood. (Tr. at 50.)

The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background who:

> has the residual functional capacity to perform at the light exertional level, that is lift and carry 10 pounds frequently, 20 pounds occasionally; stand and walk for six hours out of an eight-hour day and sit for up to two hours out of an eight-hour day; occasional ramps and stairs; no ladders, ropes or scaffolds; occasional balancing, stooping, crouching, kneeling, crawling.

> No repetitive rotation, flexion or extension of the neck; no work at unprotected heights around dangerous moving equipment, near open bodies of water or open flames; and occasional reaching at waist level and below; no overhead reaching.

(Tr. at 52.)  The VE responded that such a person could not return to any of Plaintiff's prior work but could perform the 5,000 unskilled jobs available in Southeastern Michigan (or double that figure in all of Michigan) of assembler, inspector and packager. (Tr. at 52-53.)  If another limitation of occasional fine and gross manipulation were added, all the above jobs would be eliminated. (Tr. at 53.)  However, the VE responded that 3,000 attendant type positions would be available in Southeastern Michigan, 6,000 statewide. (*Id.*) An addition to frequent fine and gross manipulation would not change the answer. (Tr. at 54.)  If the RFC were reduced to sedentary, the above jobs would not be available but there would be 1,500 security field jobs, 2,500 assembly and visual inspection jobs in Southeastern Michigan, doubling the figures if considering the entire State of Michigan. (Tr. at 54-55.)  When asked by the ALJ, the VE also testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 55.)

## F.   Analysis and Conclusions

## 1.   Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 15-19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

13

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As indicated above, if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's treating sources, that he did not properly assess Plaintiff's pain limitations and credibility, and that the ALJ's RFC findings are not supported by substantial evidence. (Doc. 10.)

### a. Medical Sources, Plaintiff's Credibility, and the RFC

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683.

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). There are important differences between the two types of sources. For example, only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2.

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from non-treating acceptable sources, 20 C.F.R. § 404.1527(c), and the ALJ should almost certainly use the same analysis for "other source" opinions as well. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2. The test looks at whether the source examined the claimant,  "the length of the treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c).

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Certain opinions of a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.

The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion[, including treating sources]," regarding whether a person is disabled or unable to work, whether an impairment meets or

equals a Listing, the individual's residual functional capacity ("RFC"),[2] and the application of vocational factors. *Id.* § 404.1527(d)(3).

Because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378  F.3d at 547).

After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

---

[2] The Commissioner's power to determine the claimant's RFC is less capacious than it appears at first. While the ALJ determines the RFC, the ALJ might be required to give controlling weight to treating source opinions on specific limitations. *See* 20 C.F.R. § 404.1513(b)-(c) (describing that medical reports can include a source's "statement about what [the claimant] can still do despite [her] impairments"). These opinions would necessarily affect the RFC. *See Green-Young v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003) (holding that treating physician's opinion that claimant could not sit or stand for definite periods "should have been accorded controlling weight").

Finally, the social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(I)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)      Treatment, other than medication, . . . received for relief of . . . pain;

(vi)     Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3.

Furthermore, the claimant's work history and the consistency of her subjective statements are

also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the

groundwork for this, stating, "An individual shall not be considered to be under a disability

unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary

may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the

most [she] can still do despite [her] limitations," and is measured using "all the relevant

evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).. The hypothetical is valid if it

includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human

Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-

BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

**b.     Analysis**

The ALJ gave sufficient explanations of the weight accorded the medical source opinions. (Tr.

at 18-19.)  In addition, I suggest that these explanations and the ALJ's resulting RFC findings are

supported by substantial evidence.

The ALJ noted that he agreed with  Dr. Femminineo's restriction that Plaintiff should not lift

more than 10 pounds repetitively and should not lift 10 to 15 pounds more often than occasionally. (Tr.

at 18.)  The ALJ also indicated that his findings were not inconsistent with not only the doctor's

specific limitations but also the doctor's conclusion that Plaintiff could not return to his previous work.

(*Id.*)  However, the ALJ also noted that "it is not clear that the doctor was familiar with the definition

19

of 'sedentary' contained in the Social Security Act and regulations" so it was also not clear whether the ALJ's finding that Plaintiff could perform light work actually conflicted with Dr. Femminineo's opinion. (*Id.*)  To the extent that it did conflict, the ALJ gave his opinion "reduced weight." (*Id.*)  The ALJ did incorporate the lifting restrictions suggested by Dr. Femminineo that Plaintiff "is unable to lift weights greater than 10 pounds on a repetitive basis" and the ALJ agreed that, "as a consequence, he would be unable to return to his previous level of employment." (Tr. at 329.) The ALJ also found that Plaintiff could not return to his past work.  The ALJ owed no deference to Dr. Femminineo's conclusion that Plaintiff could work in the "sedentary capacity only." (Tr. at 329.)  That classification is a term of art in social security and it is a conclusion reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2.

As to Dr. Bishai's restriction that Plaintiff not lift more than five to ten pounds, the ALJ noted that this opinion was given in December 2009 and was not repeated "anywhere else in the record, despite multiple opportunities to do so." (Tr. at 18.)  I suggest that the record amply supports the ALJ's conclusion.  On December 7, 2009, Dr. Bishai restricted Plaintiff to "[n]o lifting over 5-10 pounds.  Also no work above ground level.  Due to Right Shoulder Rotator Cuff Repair." (Tr. at 327.)  However, such a restriction is not found anywhere else in Dr. Bishai's continuing care notes.  In addition, Dr. Bishai's notes do, as argued by the ALJ, show that Plaintiff had made good progress after his surgeries. On April 19, 2010, Dr. Bishai noted that Plaintiff's "[a]xillary sensation is intact[,]" "[t]here is full elbow and wrist motion and finger motion with median, ulnar, and radial nerves being grossly intact with a 2+ radial pulse." (Tr. at 314.)  Dr. Bishai consistently recommended therapy and for Plaintiff to "work hard on his home exercise program" and on strengthening. (Tr. at 315, 318.)   As of June 2010, Dr. Bishai was "hoping" that in two months Plaintiff could consider "return to work, likely with restrictions." (Tr. at

318.)  By August 2, 2010, Dr. Bishai was "very happy to see how he has almost all of his motion back" but noted that Plaintiff was "still tentative about getting back to work in carrying heavy steel" and Dr. Bishai agreed that he also was "not comfortable with him working 2-3 stories up[.]" (Tr. at 320.)  The ALJ's RFC findings do not require Plaintiff to work 2-3 stories up, and they are not inconsistent with Dr. Bishai's notations.  (Tr. at 52.)

As to Dr. Pierskalla's opinion that Plaintiff could not lift over 10 pounds, climb ladders or perform overhead work, the ALJ noted that the record does not show that Dr. Pierskall ever treated Plaintiff after December 2009. (Tr. at 19.)  In addition, the ALJ notes that his "opinion is based on the claimant's subjective reports and a summary of his treatment by Drs. Femmineo and Bishai." (Tr. at 18-19.)  However, even assuming Dr. Pierskall could be considered a treating physician, his opinion that Plaintiff "is not suitable to perform the work required of an iron worker" (Tr. at 330) is the same as the ALJ's finding that Plaintiff cannot return to his past work.  In addition, Dr. Femmineo's restriction that Plaintiff "should not be lifting more than 10 lbs, climbing ladders or performing overhead work" are also incorporated in the ALJ's RFC findings and hypothetical. (Tr. at 52.)  The ALJ does not owe any deference to the doctor's classification and conclusion that Plaintiff could only perform sedentary work.  20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2.

Even assuming, *arguendo*, that the ALJ's finding that Plaintiff could perform light work rather than sedentary work was in error, since the VE also described sedentary jobs that Plaintiff could perform (Tr. at 54-55,) any error would be harmless and remand would be futile. *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)(remand futile where error harmless); *Mitchell v. Comm'r of Soc. Sec.*, No. 5:12-cv-1288, 2013 WL 3057074, at *10 , n. 10 (N.D. Ohio June 17,

2013)("Since the VE listed jobs that met the hypothetical and those jobs were all sedentary jobs, the light limitation, even if erroneous, is harmless.")

I further suggest that the hypothetical posed to the VE was in harmony with the objective record medical evidence and Plaintiff's own statements that he cares for his dog, is able to take care of his personal needs but ash some discomfort in doing so, mows the lawn with help pulling the starter, goes outside 3-4 times a day, does laundry, does a little yard work, walks and drives a car, shops in stores twice a week for 2-3 hours at a time, handles finances, plays cards, watches television, uses the computer, spends time with others, goes to church every other week, and is able to walk one mile before he needs to rest for ten minutes. (Tr. at 38-39, 212-16.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

As to Plaintiff's credibility, the ALJ properly considered the requisite factors (Tr. at 16-17) and concluded that although the impairments might be expected to cause the symptoms alleged, Plaintiff's statements concerning the limiting effects of the symptoms were not credible to the extent they are inconsistent with his RFC findings. (Tr. at 16.)  I suggest that these findings are also supported by substantial evidence for the same reasons as stated above.

### 3.      Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Date:  June 26, 2014

/S PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.

Date:  June 26, 2014

By    s/*Jean L. Broucek*
Case Manager to Magistrate Judge Morris